Vito, Plaintiff, *v.* Garfield Heights (City) et, Defendants.

Common Pleas Court, Cuyahoga County.

No. 756728.   Decided June 12, 1962.

22

*Mr. Charles W. Bradler,* for plaintiff.
*Mr. William J. Tosko,* law director.

(AMMER, J., of Pickaway County, sitting by assignment in Cuyahoga County.)

AMMER, J. This is an action for injunctive relief in which the plaintiff seeks an order for the issuance of a building permit in the City of Garfield Heights, Ohio.

The facts in the case are not in dispute. The plaintiff, Joseph Vito, is the owner of Sublot No. 107 on the west side of Turney Road in the City of Garfield Heights, Ohio.

On July 14, 1961, he secured a building permit to erect an addition to his home to be used as a funeral parlor. The plaintiff testified that he contracted with a company for such construction, had building plans drafted and revised to meet the specifications of the fire department and the building commissioner; secured a loan commitment, and the contractor proceeded to raze the front of the home by removing the front porch and digging up shrubbery around the home.

On July 31, 1961, the plaintiff received a letter from the defendant Law Director of the City, advising him that his building permit was revoked and not to proceed with further construction. The plaintiff testified that he had expended thus far approximately $1,000 toward said construction prior to the revocation of the permit.

The City of Garfield Heights became a Charter City on January 1st, 1957.

Ordinance No. 9-1954 purportedly rezoned the land in question from 2-A Retail to 1-A Residential. It appeared that this Ordinance was introduced in Council on January 25, 1954, and the minutes show that it was passed on first reading and referred to the Ways and Means Committee, and ordered a notice of public hearing to be published, said hearing to be held on March 8, 1954.

The evidence indicates that a notice of public hearing appeared in the Garfield Heights Leader, a local newspaper which was used for legal advertising, in said city, and the said notice appeared on joint Exhibit A in the issue of January 28, 1954. The notice in the case stated there were to be two publications of the same, however the publisher of the paper testified that he was instructed to cancel the second publication, which was to be on February 25, 1954.

The minutes of Council indicate that the ordinance was passed on its second reading on March 8, 1954, but the minutes do not show any report of the Planning and Zoning Commission or of the Ways and Means Committee to which the ordinance was referred and the minutes fail to show that there was any public hearing on said date. It further appears that on July 1st, 1954, the ordinance was unanimously passed by Council on third reading with a certification in the ordinance that it was posted. There is also a notation on the photostatic copy of the ordinance introduced in evidence and reading as follows: "Referred to Zoning and Planning Commission and the City Solicitor." This ordinance was passed as an emergency measure.

It appears that at the time the plaintiff made application for a building permit a search was made as to notice being published of the ordinance in question and at that time a check of the newspapers failed to reveal any notice having been made of a public hearing.

Pursuant to this the defendant Law Director gave an opinion that the ordinance was invalid and therefore the building permit could be granted. It was later brought to the attention of the defendant Law Director that there was one notice of public hearing on January 28, 1954, and in view of that the defendant Law Director wrote to the plaintiff revoking the permit.

Michael Cmok, the building commissioner, testified that he had not revoked the permit.

*Issue 1.* Was Ordinance No. 9-1954 legally enacted pursuant to the provisions of Ohio Revised Code?

*Issue 2.* If the Ordinance was properly enacted would the doctrine of equitable estoppel prevent the city officials from

revoking a building permit previously granted in the face of an opinion that the Ordinance was not legally enacted?

## LAW

In a determination of the issues herein it must be remembered that the City of Garfield Heights operated under the Revised Statutes of Ohio at the time of the enactment of the Ordinance in question and did not become a Charter City until January 1st, 1957.

It is thus necessary to determine if the Ordinance No. 9-1954 was legally enacted by the requirements of enactment of zoning ordinances under the Ohio Revised Code.

1. The first question as to whether the Ordinance was legally enacted is whether it is mandatory that ordinances seeking zoning changes must be referred to the Planning and Zoning Commission before the municipal council may enact the same. The procedure for enactment of zoning legislation is set forth in Sections 713.06 to 713.14, Revised Code.

It is necessary that a check be made of the cases in Ohio to determine whether the provision as to referring a proposed zoning ordinance to the Planning Commission is a mandatory requirement and the effect of the failure to do so as to the validity of said ordinance.

Where a municipality has a city charter and the city charter sets forth a procedure governing the steps necessary to effect a change in existing zoning classifications, to a different zoning classification, the procedure set forth in such city charter will govern, *Bauman* v. *State, ex rel. Underwood*, 122 Ohio St., 269 (1930).

In the absence of a charter provision setting forth the procedure for changing the zoning classification, Sections 713.06 to 713.12, Revised Code, govern. *State, ex rel. The Fairmount Center Co.* v. *Arnold*, 138 Ohio St., 259 (1941).

In *State, ex rel. The Fairmount Center Co.,* v. *Arnold, supra,* the Ohio Supreme Court was faced with a change in zoning classification, where the city charter in the municipality did not set forth a procedure for the city council and Planning Commission to follow with respect to rezoning. The Supreme Court of Ohio reasoned in part that in the *Bauman case, supra,* all proceedings were governed by the Akron Charter, Section 100,

which provided for a City Planning Commission, and the duties of the City Planning Commission were set forth in Sections 101 and 102 of that charter. At page 264 the court stated:

"As the Akron Charter fully covered the powers exercised by the council in that case, and as the provision of Section 4366-12, General Code, exempts the application of Sections 4366-7 to 4366-11, General Code, to legislation under the Akron Charter, there could be no question but that the provisions of the charter controlled.

"In the instant case, the procedure being under Section 4366-7 to 4366-11, General Code, compliance with such statute was necessary."

At p. 265, the Court further stated:

"The matter thus resolves itself to the question whether, by the so-called stop-gap ordinance, council may dispense with the requisite steps provided by Section 4366-11, General Code, and thus put into effect the anticipated legislation not only earlier than otherwise permitted but contrary to the plain mandate of the statute that no such change or amendment shall be made without first submitting the proposed change or amendment to the planning commission for report and giving notice by publication and holding a public hearing on whether the change or amendment should be made."

Finally, the law is clearly set forth in the more recent case of *State, ex rel. Gulf Refining Co.* v. *DeFrance et al.*, 89 Ohio App., 334 (Court of Appeals of Lucas Co., 1950). The court stated the law in the first two paragraphs of the syllabus as follows:

"1. In the absence of a provision in a municipal charter authorizing the enactment of zoning regulations, authority to enact such regulation is derived from Sections 4366-7 to 4366-12, General Code, and such regulations must be enacted in accordance with such statutes.

"2. A so-called 'stop-Gap' zoning ordinance passed without notice and hearing contrary to the requirement of Section 4366-11, General Code, is invalid."

Sections 4366-7 through 4366-12, General Code, have been re-enacted as Sections 713.06 through 713.14, Revised Code. In the case under consideration, *Vito* v. *Garfield Hts. et al.*, the

present statutory section which is pertinent to the issue under discussion is Section 713.10, which reads in part as follows:

"The legislative authority of such municipal corporation may amend or change the number, shape, area, or regulations of or within any district, but no such amendment or change shall become effective unless the ordinance proposing it is first submitted to the planning commission, board, or officer for approval, disapproval, or suggestions and the commission, board, or officer is allowed a reasonable time, not less than thirty days, for consideration and report."

On page three of the trial brief of defendants, the following statement appears: "The evidence shows that the ordinance in question was referred to the Ways and Means committee, the chairman being a member of the Planning Commission."

The evidence in this case indicates by the minutes of Council that the ordinance was referred to the Ways and Means Committee and there is no indication in the minutes of any reference to the Planning Commission or any report of that body.

Although the ordinance does say that it was referred to the Zoning and Planning Commission and the City Solicitor, the minutes of Council not indicating such action and report, would be indicative of the fact that this procedure was not followed. A reference to the Ways and Means Committee would not be the means of satisfying the mandatory provisions of the statute by referring the ordinance to the Zoning and Planning Commission.

It is therefore the opinion of the Court that Section 713.10, Revised Code, sets forth the mandatory procedure for enactment of a zoning ordinance or amendment thereof, and that the evidence in this case indicating that such a procedure was not followed relative to referring the same to the Planning and Zoning Commission and a report being made by that body, that the Ordinance was not validly enacted and that the same therefore is null and void and of no effect.

2. Although the above discussion of the law relative to procedural matter is dispositive of the case the Court will discuss other matters and issues herein. The second procedural matter which was raised here is the fact that only one notice of public

hearing was given, and the issue is whether or not two or more notices were required under the statute.

Section 713.12, Revised Code, reads as follows:

"Before any ordinance, measure, or regulation authorized by Sections 713.07 to 713.11, inclusive, Revised Code, may be passed, the legislative authority of the municipal corporation shall hold a public hearing thereon, and shall give thirty days' notice of the time and place thereof in a newspaper of general circulation in the municipal corporation. During such thirty days the text or copy of the text of such ordinance, measure, or regulation, together with the maps or plans or copies thereof forming part of or referred to in such ordinance, measure, or regulation and the maps, plans and reports submitted by the planning commission, board, or officer shall be on file, for public examination, in the office of the clerk of the legislative authority or in such other office as is designated by the legislative authority. No such ordinance, measure, or regulation which violates, differs from, or departs from the plan or report submitted by the commission, board, or officer shall take effect unless passed or approved by not less than three fourths of the membership of the legislative authority."

Reference is also to be made as to notice to Section 731.22, Revised Code, which reads as follows:

"The publication required in Section 731.21, Revised Code, shall be for the following times:

"(A) Ordinances, resolutions, and proclamations of elections, once a week for two consecutive weeks;

"(B) Notices, not less than two nor more than four consecutive weeks;

"(C) All other matters shall be published once."

As to the matter of publication of ordinances and notices, Section 731.21, Revised Code, reads—

"All municipal ordinances, resolutions, statements, orders, proclamations, notices, and reports, required by law or ordinance to be published, shall be published as follows:

"(A) In two English newspapers of opposite politics, published and of general circulation in the municipal corporation, if there are any such newspapers;

"(B) If two English newspapers of opposite politics are

not published and of general circulation in the municipal corporation, then in one such political newspaper and one other English newspaper published and of general circulation therein;

"(C) If no English newspaper is published and of general circulation in the municipal corporation, then in any English newspaper of general circulation therein or by posting as provided in Section 731.25, Revised Code, at the option of the legislative authority of such municipal corporation. Proof of the publication and required circulation of any newspaper used as a medium of publication as provided by this section shall be made by affidavit of the proprietor of either of such newspapers, and shall be filed with the clerk of the legislative authority."

In *Elmwood Place* v. *Schanzle*, 91 Ohio St., 354, 110 N. E., 122 (1915), the Supreme Court of Ohio set forth the following legal principle.

"In a municipality in which there is only one newspaper published and of general circulation, the publication in that paper of ordinances of a general nature, in the manner and for the period required by Section 4227 et seq., General Code, is a compliance with the requirements of those sections."

In a municipality where there is in circulation only one English newspaper, which is of a non-partisan nature, publication in such newspaper, when in compliance with the law, is in compliance with Section 4228, General Code (Section 731.21, Revised Code), Opinions of Attorney General 1927, p. 2388.

Section 731.26, Revised Code, provides:

"It is sufficient defense to any suit or prosecution under an ordinance, to show that no publication or posting was made as required by Sections 731.21 to 731.25, inclusive, Revised Code."

In the case of *State, ex rel. Kling,* v. *Neilson, Supt., et al.,* 3 Ohio Opinions (2d), 147, the Court of Appeals of Montgomery County held:

"that in the enactment of Ordinance 14252 the Commission failed to comply with requirements of Section 713.10 to 713.12, Revised Code, with respect to publication of notice and public hearing, and that, therefore, the Ordinance is illegal and void."

Other cases relating to this question indicating that the requirement of notice is mandatory, are as follows:

*State, ex rel. Lieux,* v. *Westlake,* 69 Ohio Law Abs., 552.

A Cuyahoga County Common Pleas Court case No. 652801 Decided in 1954.

A Village Zoning ordinance which was not adopted pursuant to the requirements set forth in Section 4366-7 to 4366-11, General Code, does not constitute a valid Zoning regulation: Court held—

"Stipulations do not evidence strict adherence to the procedural steps required."

*State, ex rel. Fairmount Center Co.,* v. *Arnold,* 138 Ohio St., 259.

Where the Supreme Court held in (Syllabus 2)

"2. A municipal Council acting under Section 4366-7 to 4366-11, General Code, may not amend or change the number, shape, area or regulations of, or within, any Zoning district without following the procedure in Section 4366-11, General Code."

The Courts have likewise held in:

*Morris* v. *Roseman,* 55 Ohio Opinions, 255:

"A non charter city must comply with provisions of Section 4366-11, General Code, now Section 713.12, Revised Code, which requires a public hearing on such ordinance preceded by a 30 day notice of time and place of such hearing."

And, *State, ex rel. De Marte,* v. *Woodmansee,* 47 Ohio Law Abs., 513:

"The failure of a municipal Council in enacting emergency legislation under Section 4366-7 to 4366-11, General Code, to publish notice as required therein renders such legislation of no force or effect."

It is clear that a notice under the provisions of Section 731.22 (A), Revised Code, must be published once a week for two consecutive weeks even though under said statute such notice may appear in only one newspaper. Section 713.12, Revised Code, refers to notice to be given for public hearing but it is necessary to refer to Section 731.22, Revised Code, for the number of notices required which the statute provides must be not less than two nor more than four consecutive weeks.

The defendants mention in their brief that the Ordinance in question was properly posted. This of course refers to the

posting following enactment of the same and would have no reference relative to the matter of notice for public hearing.

It is therefore the opinion of the Court that this provision of the statute requiring at least two notices of public hearing is mandatory and that the failure to comply therewith in the enactment of Ordinance No. 9-1954 results in said Ordinance being invalid and of no force and effect.

3. The third issue as to the enactment of this Ordinance is whether the failure of minutes of Municipal Council to show that a public hearing was held would result in said ordinance being invalid.

In *State, ex rel. Kling et, v. Nielson, Supt., et al*, 103 Ohio App., 60 (Montgomery County Court of Appeals, 1957), the first paragraph of the syllabus reads as follows:

"In the enactment of zoning ordinances, where the charter of a city does not specifically set forth the procedure to be followed, such charter city is controlled by statutory procedure and, under the provisions of Section 4366-11, General Code (Section 713.12, Revised Code), publication of notice and a public hearing are mandatory."

In *Brown v. Village of Milford et al*, 8 O. N. P. (N. S.), 317 (Hamilton County Court of Common Pleas, 1901), paragraph 1 of the syllabus reads as follows:

"In the absence of testimony in support of an allegation that in the passage of an ordinance certain intermediate steps prescribed by statute were not taken, it will be presumed that such steps were taken."

Although the fact situation in *Humphrey v. Youngstown*, 75 Ohio Law Abs., 239 (Mahoning County Court of Appeals, 1955), is not applicable to the issue under consideration, certain language appearing in the *Humphrey case*, may be of significance.

On page 242 Presiding Judge Phillips cited the following authorities:

"It is not to be expected that the technical rules of parliamentary law, which are enforced for the convenience in governing and controlling legislative bodies, should be vigorously applied to the proceedings of a Village Council."

*Madden v. Smeltz*, 1 Oh. C. C. D., 424, 427 (1887).

Section 731.45, Revised Code, reads in part as follows:

"The legislative authority of a municipal corporation shall determine its own rule and keep a journal of its own proceedings."

There is much language available in Volume 38 of the second edition of Ohio Jurisprudence which would indicate that it is not essential for the minutes to show that a public hearing was held in order to hold an ordinance in compliance with the statutory law. In Volume 38, Ohio Jurisprudence (2d), are the following:

Sec. 131 p. 502—E. MINUTES AND RECORDS, Generally, Inspection—

"The general statutes relating to municipal corporations require the legislative authority of a municipal corporation to keep a journal of its proceedings."

Sec. 132 p. 503—SUFFICIENCY—

"It is said that strict or formal accuracy is not to be looked for as required in the records of municipal councils, and that it be sufficient if intent of the council with respect to a particular matter, upon consideration of the whole of the record relating thereto, is manifest. Also, as a general rule, such a record is regarded as sufficient if the essential facts in question are necessarily to be inferred therefrom."

Sec. 133—EFFECT OF DEFECTS and OMISSIONS—

"Ordinarily the rights of persons dealing with a municipality will not be prejudiced by the failure of the recording clerk to make correct minutes of the proceedings, and action of the Council with respect to the matter in question."

Sec. 134—PAROL EVIDENCE OF MATTERS NOT SHOWN BY RECORD—

"In some cases, at least, action taken by the council with respect to a particular matter, no record of which has been made, may be shown by parol evidence . . . But as a general rule, the existence of jurisdictional facts must be shown by the records."

Sec. 129—PRESUMPTION OF VALIDITY AND REGULARITY—

"In the absence of evidence to the contrary, the law indulges a prima facie presumption in favor of the validity of the proceedings of a municipal council."

It is the opinion of the Court that the failure of the minutes of Council to indicate that a public hearing was held on March 8, 1954, is not controlling as to whether in fact such public hearing was held. The evidence indicates that such a public hearing was scheduled and the minutes indicate that it was passed for second reading. Therefore it is the opinion of the Court that this defect would have no effect upon the validity of the Ordinance.

In conclusion the Court is of the opinion that the Ordinance 9-1954 was not properly enacted due to the failure of said Ordinance to be referred to the Planning and Zoning Commission and a report of that body and also for the reason that the notice of public hearing was published only once, and not at least two times as provided by law, and therefore said ordinance being invalidly enacted is of no force and effect.

The question as to equitable estoppel need not be discussed by the Court in view of the above holding as to the enactment of the Ordinance.

Inasmuch as the Ordinance was not properly enacted the area in question is still zoned as Retail and therefore the plaintiff is entitled to a building permit for the construction of a funeral home and the same should be issued.

As there is a question as to whether the original permit was revoked the order of the Court will be that a mandatory injunction issue to the Building Commissioner to issue a building permit for the land in question for the remodeling of the premises and constructing the same for a funeral home.

Counsel for the plaintiff will prepare a Journal Entry consistent with the above ruling of the Court, and saving proper exceptions to the defendant.